## MACKEY vs. STAFFORD, imp.

EQUITY: EVIDENCE. *Clear proof required to convert deed or bill of sale into a security.* ESTOPPEL *by deed.*

1. Deeds and written contracts must be taken to contain the real contracts between the parties, until the contrary is established by clear and convincing proof; and this applies to a bill of sale or deed of conveyance, absolute on its face, alleged to be a mere security.

2. S. and C., partners, gave plaintiff a mortgage of real estate, and subsequently gave him two chattel mortgages in their firm name, as security for advances. After default, the chattels in one mortgage were sold at public sale, on due notice, to plaintiff's son; and the mortgagors gave plaintiff a bill of sale, under seal, of the property in the other chattel mortgage, reciting that the sale was made to save further expense, because more was due on the property than it was then worth, and in consideration of plaintiff's allowing a certain amount on his claims against the mortgagors. They also sold and conveyed to the plaintiff, by deed absolute on its face, a part of the real estate included in the real estate mortgage. These sales were followed by a complete change of possession. Subsequently, plaintiff and S. *alone* entered into a written agreement, which recited that plaintiff was owner of the property included in such sales, and by which S. agreed to render certain services about the

personal property; and plaintiff agreed, on conditions never performed, to execute *to S. alone* certain conveyances and releases affecting a part of the real and personal property described in the mortgages. In this action to foreclose the real estate mortgage for a balance claimed, C. did not answer; but S., alleging that said sales were a mere change in the form of the security, claimed a right to redeem from them, and an accounting. The claim was supported chiefly by S.'s testimony to oral agreements and understandings, positively denied by the plaintiff. *Held*, that there was no sufficient evidence to support the answer,• and that S. is *estopped* by his subsequent written agreement from denying plaintiff's ownership as therein admitted.

RYAN, C. J., rests his assent to the judgment on the ground that both defendants have concurred in extinguishing the right of the partnership to redeem or to question plaintiff's proceedings under the chattel mortgages: C., by his default herein; and S., by his subsequent agreement above described.

APPEAL from the Circuit Court for *Sauk* County.

Action to foreclose a mortgage of real estate, for a balance of the mortgage debt alleged to be due. The mortgage covered real estate belonging to each of the defendants Carver and *Stafford*, and also a mill with the land appurtenant, at Reedsburg, owned by those defendants jointly as partners under the firm name of J. P. Stafford & Co. The amount alleged to be due consisted chiefly of a balance upon a note of the firm, but included, also, the amount of a note for over $1,000 executed by *Stafford* alone. The circumstances under which the mortgage was given, the subsequent transactions between the parties, and the nature of the defense and counterclaim set up by the defendants *Stafford and wife*, are somewhat fully stated in the opinion of ORTON, J., *infra*, to which reference must here be made. They are also outlined in the foregoing syllabus.

The decision of the court rests so largely upon the written agreement between *Stafford* and the plaintiff, of April 8, 1876, and the default and disclaimer of Carver, in addition to the regularity of the chattel mortgage sale of January 25, 1876, and the absolute form of the bill of sale and deed of con-

veyance executed by *Stafford* and Carver on the 27th of the same month, that it has not been thought worth while to attempt a statement here of the voluminous evidence relating to the facts which occurred just before and at the time of the sales, upon which the answering defendants relied to show that the latter should be treated as a mere change in the form of plaintiff's security. It is sufficient to say that there was some evidence to support the various contentions of counsel upon that subject.

The bill of sale executed by Carver and *Stafford*, under seal, on the 27th of January, 1876, omitting formal parts, etc., is in these words: "Whereas, *J. Mackey* holds claims by chattel mortgage on all the staves, heading, cooperage-stock, broom handles and broom-handle stock of J. P. Stafford & Co., at their mill at La Valle, as also in the yard adjacent thereto, being all manufactured by them at La Valle, as also on the mill fixtures and mill machinery therein, including water-wheel machinery for sawing staves, and all belts and other machinery and property in and about the mill and mill-yard rented by them of J. F. Sanford, at La Valle; and whereas there is more against said property now than the same is now worth, and to avoid any further expense in selling and disposing of the same: now, in consideration of $4,500 to be allowed and indorsed on the claims of said *J. Mackey* against us, we hereby sell, assign and convey to the said *J. Mackey*, all of the above described and mentioned property, to have and to hold to himself, his heirs and assigns forever. And we hereby agree that said *Mackey* may keep said staves where they now are till sold, not extending beyond the first day of December next, except those in front of the mill to be removed within thirty days, if required, and at least two weeks notice to be given before they shall be required to be removed."

The agreement of April 8, 1876, between *Stafford* and the plaintiff, omitting the formal parts, is in these words: "Whereas, said first party is the owner of certain cooperage and broom-

handle stock lately owned by and transferred to said first par-
ty by J. P. Stafford & Co.; and whereas, also, said J. P. Staf-
ford & Co. sold said *Mackey* certain wheel machinery, stave-
mill and lands adjacent thereto, and holds mortgage on the
dwelling of said second party: Now witness, that said *J. P.
Stafford*, said second party, agrees to render his personal ser-
vices in properly caring for said stock above mentioned, and
putting it in proper condition for market, and in loading and
marketing the same, and agrees also to furnish team and wag-
on, and the services of his son in and about the same, until
they are all marketed.   Now in consideration of the premises,
and in full compensation thereof, the said first party agrees to
allow said second party all that said stock now on hand shall
net above $21,000 and interest on $18,500 at the rate of ten
per cent., until the said sale shall net a sufficient amount to
pay the same, or shall be otherwise paid by said second party.
Said first party further agrees that in case the said net sales
shall fail to pay the full amount of $21,000 and interest as
herein provided, that then, in case the said second party will
pay him such balance on or before the first day of December
next, he will release the mortgage on his house and lots, and
convey to him the stave-mill, lands and machinery unsold,
which were purchased by him of J. P. Stafford & Co., and
the balance of cooperage stock on hand, and will release said
second party, individually, from all claims and demands he
may hold against J. P. Stafford & Co.   Said first party fur-
ther agrees, if the above sum shall be paid him as above, less
$2,000, then he will deed and transfer to said second party,
and release as herein provided; provided, said *Stafford* shall
secure to him such balance on the said stave-mill and lands con-
veyed therewith, and on the house and lands covered by the
mortgage now held by said first party.   Such services so
to be rendered by said second party to be well and faithfully
rendered to the satisfaction of said first party, and to care for
and look after all machinery and property herein referred to."

The circuit court found the facts to be as alleged by the plaintiff, and rendered judgment in his favor for the relief demanded by him; and the defendants *Stafford and wife* appealed.

*G. Stevens*, for the appellants, contended, that as all the writings between the parties were drawn up by the plaintiff, who was an experienced lawyer, the transactions should be examined with great care, as being between experts and nonexperts; that they were contracts between attorney and client, and should be judged by the rules applicable to such contracts (*McBride v. Ins. Co.*, 30 Wis., 562; *Winans v. Ins. Co.*, 38 id., 342; *Sears v. Shafer*, 6 N. Y., 268; *Cook v. Nathan*, 16 Barb., 342; *Mills v. Mills*, 26 Conn., 213; *Casborne v. Barsham*, 2 Beavan, 76; Story's Eq. Jur., § 300 b, § 310, and notes); that it was clear from all the evidence that defendants allowed plaintiff to put his own price upon the property sold at the mortgage sale, upon that transferred to him by bill of sale, and upon the real property conveyed to him, the prices so fixed being far below the real value, and, as to some of the property, far below prices which they had recently been offered, and had declined by plaintiff's advice; that they did this *under a belief* that they were to have the right of redemption; that this belief could only have arisen from plaintiff's words and actions, and he must have known of its existence; that the very facility with which they acquiesced in his terms was sufficient of itself to put him upon inquiry, and deprive his conduct of all claim to fair dealing (*Godfrey v. Germain*, 24 Wis., 410; *Avery v. Johann*, 27 id., 246; *Hopkins v. Langton*, 30 id., 380); and that the clear preponderance of evidence shows a mutual understanding and agreement at the times of the mortgage sale and the execution of the bill of sale and deed, that these transactions were merely for further security, and that the mortgagors would still have the right of redemption. Counsel further contended, that, in view of the undisputed arrangement between the partners, entered into with plaintiff's knowledge

and concurrence before April 8, 1876, by which either one of them was authorized to take the whole firm property and business, on condition that the individual property of the other should be released from the mortgage, the testimony of Carver that since he abandoned the idea of taking the property under that arrangement, he has not claimed any interest in it, and there has been no talk about the *firm* redeeming, should not prejudice the claim of *Stafford* to the right of redemption. 2. That even if it was the intention of the parties to bar the right of redemption, these transfers ought not to stand in equity, because, in such a transaction between mortgagor and mortgagee, it should be made very clearly to appear that everything was fair and honest, and that the mortgagee did not make use of his power as such to drive the mortgagors into a surrender of their right of redemption for a grossly inadequate consideration. 1 Hilliard on Mort., 69 et seq.; *Brown v. Gaffney*, 28 Ill., 149; *Ennor v. Thompson*, 46 id., 214; *Thompson v. Lee*, 31 Ala., 292; *Batty v. Snook*, 5 Mich., 231; *Sears v. Shafer, supra; Holridge v. Gillespie*, 2 Johns. Ch., 30; *Russell v. Southard*, 12 How., U. S, 139. 3. That the pretended sale to plaintiff's son, under the chattel mortgage, of the Reedsburg property, was a merely nominal sale, leaving the property in the hands and under the control of the plaintiff as before, and so leaving him liable to account for it as before *(Pettibone v. Perkins*, 6 Wis., 616; *Flanders v. Thomas*, 12 id., 410); but that, being a sale *in form*, for less than one-half of what the property could have been sold for, it must have had a powerful effect upon the mortgagors in compelling them to execute the bill of sale and deed two days later. 4. That the agreement of April 8th, 1875, between plaintiff and *Stafford*, can only be understood as executed in pursuance of the understanding between the parties at the time the deed and bill of sale were made; that it was in fact the writing which *Stafford* testifies was promised him by plaintiff, showing the right of *Stafford* to redeem; and that it shows the previous transactions to have

amounted only to a mortgage. *Ragan v. Simpson*, 27 Wis., 355. 5. That, assuming that plaintiff was the absolute owner on the 8th of April, 1876, of the property described in the contract of that date, that contract created substantially the relation of mortgagor and mortagee between plaintiff and *Stafford*. It gave *Stafford* the absolute right to a conveyance of all the property and to a discharge of the mortgage here in suit, upon payment of $21,000 and interest. If, at any time between the date of that contract and December 1st, 1876, *Stafford* had tendered that amount and interest, he would have been entitled to a conveyance, without having done a day's work or sold a single stave. And if he made default in such payment, he still has the rights of mortgagee after default, until the plaintiff has foreclosed his right of redemption under that contract, by an action for that purpose. *Button v. Schroyer*, 5 Wis., 598; *Bull v. Shepard*, 7 id., 449; *Mowry v. Wood*, 12 id., 413; *Baker v. Beach*, 15 id., 99; *Beckwith v. Philleo*, id., 223; *McIndoe v. Mormon*, 26 id., 588. And a temporary abandonment of his right, through ignorance, does not affect the right itself, in the absence of a written surrender of his interest in the land. R. S., ch. 106, sec. 6.

*P. L. Spooner*, of counsel for the appellants, contended, 1. That a mortgagee, selling under a power of sale in the common form, cannot be the purchaser of the property either for himself or for another. *Dyer v. Shurtleff*, 112 Mass., 165; *Litchfield v. Cudworth*, 15 Pick., 30; *Buffalo S. E. Works v. Ins. Co.*, 17 N. Y., 403; *Pulver v. Richardson*, 3 N. Y. Sup. Ct. R., 436; *Korns v. Shaffer*, 27 Md., 83; *Cunningham v. Rogers*, 14 Ala., 147, 150; *Mapps v. Sharpe*, 32 Ill., 13, 22: *Hall v. Towne*, 45 id., 493; *Griffin v. Marine Co.*, 52 id., 130; *Roberts v. Fleming*, 53 id., 196; *Robertson v. Norris*, 1 Giff., 421. The mortagee in such a case is trustee of the mortgagor for the sale of the property, and stands upon the same footing as other like trustees. *Downes v. Grazebrook*, 3 Merivale, 200; *Howard v. Ames*, 3 Met., 311; *Blakeslee v. Rossman*,

*ante*, p. 116. 2. That it was clear from the undisputed facts in evidence, that the sale of the Reedsburg property covered by the chattel mortgage was a sale to the plaintiff himself, and his son was only a nominal purchaser. 3. That it was also clear from the evidence that said sale was not a fair or *bona fide* sale, conducted with a view to obtaining the highest price that the goods would bring, but was made for a much smaller sum than had just been offered for the goods and declined by plaintiff's advice, although there is no pretense that staves had fallen in value, but the proof is that the market was advancing; and that such an unfair or fraudulent sale of mortgaged property by the mortgagee will not defeat the mortgagor's equitable rights. *Dyer v. Shurtleff* and *Howard v. Ames, supra; Matthie v. Edwards*, 2 Coll., 480; 2 Green Eq. (N. J.), 45; *Bronson v. Kinzie*, 1 How., U. S., 321, per TANEY, C. J.; *Montague v. Dawes*, 14 Allen, 369; *Pettibone v. Perkins*, 6 Wis., 616. 4. That, "if a mortgagee use the power his mortgage may have given him, to obtain the equity of redemption at less than its value, and for less than others would have given for it, a court of equity will hold the transaction a mortgage, and permit the mortgagor to redeem " (*Goodman v. Pledger*, 14 Ala., 118; *Holridge v. Gillespie*, 2 Johns. Ch., 30); and that, under this rule, the bill of sale of the property at La Valle cannot stand in a court of equity. 5. That the weight of the evidence is, that plaintiff led the mortgagors to believe that the sale under the chattel mortgage was a mere form to save expense and put the property in such a position that he could handle it better, in consequence of which belief they made no effort to have competition at the sale; and that he also led them to understand, at the time of the execution of the bill of sale and deed, that they would be at liberty to redeem, and that the papers were executed only as necessary legal forms.

*J. W. Lusk*, for the respondent, contended upon the evidence, that the several sales were valid and were understood

by all parties, at the times thereof, as absolute, although the evidence on both sides shows that after such sales plaintiff repeatedly expressed his willingness to transfer the property to *either* of the mortgagors or to *any other person*, if he could be properly secured for the money he had in it; that the terms of the bill of sale of the La Valle property, in the careful provision defining and limiting plaintiff's rights as to the use of the mill premises at La Valle for storage of the staves, were entirely inconsistent with the idea that the sale was regarded as a mere change in the form of security, and the property.as still belonging to the mortgagors; that the agreement of April 8th expressly acknowledges the validity of the sales, and plaintiff's absolute ownership of the property therein described, and proceeds throughout upon the assumption that the firm had no right of redemption, while it secured to *Stafford* individually a right to obtain the whole property for himself upon compliance with the conditions there named. To the point that the written instruments would be regarded as expressing the real contracts of the parties, except upon the clearest proof of the contrary, counsel cited *Newton v. Holley*, 6 Wis., 604; *Lake v. Meacham*, 13 id., 362; *Kent v. Lasley*, 24 id., 654; *McCellan v. Sanford*, 26 id., 595; *Sweet v. Mitchell*, 15 id., 661; *Hileman v. Wright*, 9 Ind., 126; *Brown v. Carson*, Busbee's Eq. (N. C.), 272; *Day v. Seely*, 17 Vt., 542; Story's Eq. Jur., § 152. He further argued that *Stafford* could not now claim in this action a right to redeem under the agreement of April 8th, for the reason, among others, that no such claim was made in his answer, or litigated at the trial. *Whiting v. Gould*, 2 Wis., 552–587; *Sweet v. Mitchell, supra; Larkin v. Noonan*, 19 Wis., 82; *Stevens v. Brooks*, 23 id., 196; *Johnson v. Filkington*, 39 id., 62; *Newton v. Allis*, 12 id., 380; Story's Eq. Jur., § 257.

ORTON, J. On the 25th day of February, 1875, the defendants *J. P. Stafford* and W. I. Carver, with their wives, exe-

cuted a mortgage to the plaintiff *Mackey*, of certain real estate in and about the village of Reedsburg, in Sauk county, to secure the payment of any sums of money that might from time to time be due and owing from them or either of them to the plaintiff; to foreclose which mortgage, this action is brought.

On the 26th day of March, 1875, the defendants, as further and collateral security, executed a chattel mortgage on certain staves, broom handles, stave and broom-handle stock, stave machinery, etc., in and about a mill at La Valle in said county; and on the 3d day of April, 1875, another chattel mortgage, for like purpose, on certain staves and heading, and stave and heading bolts, in and about a mill at Reedsburg. After default in payment by the defendants, the plaintiff, on due notice, sold at public auction the property described in the last named mortgage, on the 25th day of January, 1876, to one F. J. Mackey, the son of the plaintiff, who was the only bidder on the same, for the sum of $4,000; and on the 27th day of January, 1876, the defendants sold to the plaintiff the property described in the first named chattel mortgage, for the sum of $4,500, and executed therefor a bill of sale under seal, of that date, in which the purpose of the sale is stated in the following language: " Whereas, there is more against said property now than the same is now worth, and to avoid any further expense in selling and disposing of the same, now, in consideration of $4,500, to be allowed and indorsed on the claims of *J. Mackey* against us, we hereby sell," etc. On the same day, the defendants also sold and conveyed to the plaintiff certain real estate, which formed a part of the mortgaged premises, for the agreed price of $3,000. These several sums, together with the sum of $649.72, realized by the plaintiff on some other collaterals, were indorsed as payments on the mortgage; and the circuit court computed the amount remaining due upon the mortgage, after deducting these several sums from the sum admitted by the answer to be due upon the mortgage, and rendered judgment accordingly.

The appellants, in their answer, claim that these several sales were *colorable* only, and as a mere change in the form of the security, and not designed or intended to cut off the right of the defendants to redeem; and pray for an accounting by the plaintiff, and that they may redeem on payment of what remains due upon such accounting.

The answer is made by the defendants *J. P. Stafford and wife*, the appellants, and the defendant Carver does not appear. The plaintiff, by replication, denies that said sales were *colorable* only, and alleges that they were all absolute, in good faith, and for an adequate consideration.

The parol agreements and verbal understandings set up and insisted upon by the appellants as showing that these sales were not absolute, depend upon the testimony of the defendant *Stafford* almost exclusively, and are most positively denied by the plaintiff. They were followed by a complete change of the possession of the property. The bill of sale in one case recites the purpose to be an absolute sale, and to save the expense of foreclosure.

The suspicious delay of the defendant *Stafford* in claiming any right of redemption, until informed by legal counsel that he had such right, in the spring of 1877, and the full disclaimer of any such right at all times by the defendant Carver, tend very strongly to show that no such right was reserved. The writings and deeds between the parties must be taken to contain the real contracts, upon the subjects embraced therein, until the contrary is established by the clearest proof *(Newton v. Holley*, 6 Wis., 604); and this court has well said, in *Lake v. Meacham*, 13 Wis., 362: "Courts cannot interfere with such contracts when any part of the foundation for the relief rests upon conjecture or mere probability of fact, but the whole must be cleared of reasonable doubt, and be sustained by solid and convincing testimony;" and courts will not adjudge a deed absolute on its face to be a mortgage, without the same degree of proof. *McClellan v. Sanford*, 26 Wis., 595.

In respect to the public sale upon the mortgage of the 3d of April, 1875, it was ably urged by the eminent counsel of the appellants, that the sale made to the son of the plaintiff was, under the circumstances, a sale to the plaintiff himself, and continued his mortgage relation to the property, and that he still remained the trustee of the mortgagor, and must account for his future disposition of the property. As we view the effect of the evidence, and especially of the subsequent agreement of April 8, 1876, between the plaintiff and the defendant *Stafford*, this objection has been fully waived by the only party who now seeks to set it up. This agreement in writing was a subsequent and independent contract in respect to the property, between the defendant *Stafford* individually and the plaintiff, in which its absolute ownership by the plaintiff is admitted and conceded. It commences with the language: " Whereas said first party [*Mackey*] is the owner of certain cooperage and broom-handle stock, lately owned by and transferred to said party by J. P. Stafford & Co., and whereas, also, said J. P. Stafford & Co. sold said *Mackey* certain wheel machinery, stave-mill and lands adjacent thereto," etc. This language operates as a full and complete confirmation of all the sales, and estops the defendant *Stafford* from questioning the absolute ownership of the property by the plaintiff, upon which the very agreement itself is based. The defendant Carver does not seek to raise the question, nor ask to redeem.

There appears to be no error in the findings of the circuit court.

RYAN, C. J. I concur in the judgment of this appeal, on the ground that the default of the defendant Carver is conclusive against any right he might have to question the respondent's absolute title derived under the chattel mortgages, and that any right of the appellant to redeem under the chattel mortgages, or for an account of the amount realized by the respondent from the sale of the mortgaged chattels, is waived

by and merged in the agreement of the 8th of April, which he pleads. These positions of the two mortgagors are quite consistent. They had been partners, and gave the chattel mortgages as such. The one abandons all right under them; and the other takes a new right to himself alone, inconsistent with any right of the partnership to redeem or for an account, upon terms which he fails to fulfill. Both concur, therefore, in extinguishing the right of the partnership to redeem, or to question the respondent's proceedings under the chattel mortgages. And the appellant establishes no right in himself under the agreement for his separate benefit.

*By the Court.* — The judgment is affirmed.